# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ANZALONE MASONRY, INC, a California corporation; KERRYANNE ANZALONE, an individual; BLASÉ ANZALONE, JR., an individual; WESTERN NATIONAL MUTUAL INSURANCE COMPANY, a Minnesota corporation; SOLPAC CONSTRUCTION, INC., a California corporation doing business as SOLTEK PACIFIC CONSTRUCTION COMPANY; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation; and DOES 1 through 4, inclusive,<br><br>　　　　　Defendants. | Case No. 2:17-cv-04221-ODW(AFMx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [32]** |

## I. INTRODUCTION

Plaintiff Construction Laborers Trust Funds for Southern California Administrative Company ("Plaintiff") brings this action against Defendants Anzalone Masonry, Inc. ("Employer"), KerryAnne Anzalone ("K. Anzalone"), and Blase Anzalone, Jr ("B. Anzalone") (collectively, "the Anzalones") (collectively with Employer, "Defendants") for (1) Contributions to Employee Benefit Plans; (2) Specific Performance Compelling an Audit; (3) Damages for Breach of Fiduciary Duties. Plaintiff also brought causes of action against Western National Mutual Insurance Co. ("Western"), Solpac Construction Inc. ("Solpac"), and Liberty Mutual Insurance Co. ("Liberty") for Recovery Against License Bond (Western) and Recovery Against Payment Bond (Solpac, Liberty).[1] (*See* Compl., ECF No. 1.) Defendants failed to respond to the Complaint, and the Clerk entered default on August 30, 2017 as to the Anzalones, and on September 5, 2017 as to Employer. (ECF Nos. 21, 23.) Plaintiff now moves for entry of default judgment against Defendants. (ECF No. 32.) For the reasons discussed below, the Court **GRANTS** the Motion.[2]

## II. BACKGROUND

### A. Factual Background

Plaintiff is an administrator and agent for the collection of several employee benefit plans ("Trust Funds") and a fiduciary to the Trust Funds. (*Id.* ¶ 3.) Each one is an express trust, created by written agreements and qualifying as a multi-employer plan within the meaning of the Employee Retirement Income Security Act ("ERISA") § 3(37)(A), 28 U.S.C. § 1002(37)(A). (*Id.* ¶ 3.) In order to work on projects for the San Diego Unified School District ("SDUSD"), Employer became bound by an agreement

---

[1] The claims against Western, Solpac, and Liberty were previously dismissed pursuant to a settlement agreement and Fed. R. Civ. P. 41(a)(1), and so are not relevant to this motion. (ECF Nos. 10, 17).

[2] Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

between SDUSD and San Diego Building and Construction Trades Council, and their signatory Craft Unions (one of which is Southern California District Council of Laborers and affiliated Laborers Local No. 89 ("Union")) known as the "SDUSD Project Stabilization Agreement Construction and Major Rehabilitation Funded by Proposition S" ("SDUSD PSA"). (*Id.* ¶ 21.)

Pursuant to the SDUSD PSA, Employer is bound to the various Trust Agreements ("the Agreements"), which established each of the Trust Funds. (*Id.* ¶ 22.) The Agreements obliged Employer to submit monthly fringe benefit contributions ("Monthly Contributions") to the Trust Funds for each hour worked (or paid for) by employees performing services covered by the Agreements. (*Id.*) Additionally, Employer was required to submit monthly reports, detailing the name, address, social security number, and hours worked that month for each employee covered. (*Id.*) These monthly reports were required even when there were no employees to report for the reporting period. (*Id.*)

Plaintiff alleges that the Monthly Contributions constitute assets of the Trust Funds. (*Id.*) As a Trustee, it has a fiduciary duty to marshal those assets so they may be applied for the benefit of the participants and beneficiaries in accordance with the various Trust Agreements. (*Id.*) Under the Agreements, if Employer fails to timely pay monthly fringe benefit contributions, then Employer is obligated to pay liquidated damages in the sum of $25.00 or 20% of the unpaid benefits to each of the Trust Funds. (*Id.* ¶ 23.) Employer would also be required to pay interest at the per annum rate of 5% over the rate set by the Federal Reserve Board, effective on the date each contribution is due. (*Id.* ¶ 24.) The Agreements provide Trust Funds with the authority to audit Employer payroll and business records, and Employer is liable for the costs of such an audit. (*Id.* ¶ 26.)

Employer employed workers who are covered by the Agreements; however, Employer failed to pay the monthly fringe benefits to the Trust Funds. (*Id.* ¶ 27.) It also refused to comply with an audit by the Trust Funds. (*Id.*) As a result of Employer's

failure to pay the specified rates from October 2016 through January 2017, Plaintiff alleged damages of $24,630.24, consisting of $19,977.10 in unpaid Monthly Contributions, $3,995.44 in liquidated damages, and $577.70 in interest on the late and/or unpaid fringe benefits owed through June 2, 2017.[3] (*Id.* ¶ 29)

Plaintiff alleges that it, and its participants, have also suffered harm that is impractical to accurately quantify. (*Id.* ¶ 30.) For example, it may have suffered

> [T]he costs of collecting the Monthly Contributions from [Employer] or third parties (not including the cost of this litigation), cost of special processing to restore benefit credits because of late Monthly Contributions, the temporary loss of insurance coverage by employees (even if later restored)[,] and medical harm to participants and beneficiaries who may have foregone medical care when notified that medical insurance ceased because of their employer's failure to pay Monthly Contributions.

(*Id.*) Plaintiff alleges that the purpose of the liquidated damages provisions of the Agreements was to compensate for this type of unquantifiable harm. (*Id.*) Although Plaintiff—as a Trustee—has the authority to waive part or all of the liquidated damages, it has chosen not to do so. (*Id.*)

Plaintiff alleges that the Anzalones are fiduciaries and/or parties in interest to the Trust Funds under 29 U.S.C. §§ 1002(14), 1002(21)(A), because they exercised discretionary authority or control respecting management or disposition of the Trust Funds' assets. (*Id.* ¶¶ 15, 41, 46.) Plaintiff further alleges that the Anzalones are majority shareholders and/or the beneficial owners of Employer. (*Id.* ¶ 17.) They acted on behalf of Employer in their dealings and relations with the Trust Funds and the Union and determined which employees and hours worked would be reported to the Trust Funds. (*Id.* ¶¶ 16–19.) Specifically, the Anzalones "are responsible for running the day to day operations and day to day financial decisions of [Employer]," and for "decisions

---

[3] The Complaint also claimed additional Monthly Contributions, liquidated damages, audit fees, and interest according to proof at the time of trial. (*Id.* ¶ 29.)

pertaining to the reporting and payment of contributions." (*Id.* ¶ 16.) The Anzalones "personally maintained control of those funds which should have been turned over to the [Trust Funds]." (*Id.*)

The Agreements provide that Employer is responsible for the Trust Funds' attorneys' fees related to any legal action necessary to compel an audit, and for the audit fees necessary to complete the audit of Employer's records. (*Id.* ¶ 35.) The Agreements also require that Employer deduct monthly fringe benefits due to the Construction Laborers Vacation Trust Fund for Southern California ("Vacation Fund") from employees' weekly paychecks in the amount specified. (*Id.* ¶ 42.) Plaintiff alleges that Employer and/or the Anzalones did not distribute the portions of the prevailing wage that Employer certified was to be paid to the Trust Funds from the employees' weekly paychecks and kept those amounts for their own use. (*Id.* ¶ 44.)

Plaintiff alleges that the Anzalones are responsible for preparing and issuing certified payroll reports to public agencies under California Labor Code § 1776, and allege that the Anzalones had,

> [D]iscretionary authority or control over sufficient, segregable funds to pay the amounts certified under penalty of perjury, that would be withheld from employees' weekly wages for contribution to the Trust Funds in order to meet prevailing wage obligations, including the authority to write checks on the accounts in which such funds were held, but instead kept them for his own use, or for the use of [Employer].

(*Id.* ¶ 45.) Plaintiff alleges that Employer failed to timely account for and turn over the assets of the Trust Funds and further failed to apply such assets for the exclusive benefit of participants and beneficiaries of the Trust Funds. (*Id.* ¶ 48.) Employer instead used those assets for its own benefit, breaching its fiduciary duties to the Trust Funds within the meanings of section 404(a)(1)(A),(B),(D) or ERISA, 29 U.S.C. §§ 1104(a)(1)(A),(B),(D). (*Id.*) Plaintiff contends that the acts and omissions by Employer or the Anzalones constitute misuse, misappropriation, and/or conversion

from employee benefit plans within the meaning of 18 U.S.C. § 664 and breach of their fiduciary obligations within the meaning of 29 U.S.C. §§ 1104–06. (*Id.* ¶ 49.)

Pursuant to section 409 of ERISA, 29 U.S.C. § 1109, Plaintiff alleges that Employer and the Anzalones are personally liable to restore to the Trust Funds any losses to them resulting from the breach of their fiduciary duties. (*Id.* ¶ 50.)

The monetary damages prayed for in the Complaint have been paid by third parties so the only remaining damages Plaintiff seeks against Defendants relate to attorney's fees and costs claimed in the first, second, and third Claims for Relief. (Decl. of Marsha M. Hamasaki in support of Mot. for Default Judgement and Final Order for Accounting ("Hamasaki Decl.") ¶ 19, ECF No. 33.) Plaintiff now seeks to recover from both Employer and the Anzalones, jointly and severally: **$3,813.25** consisting of $2,043.15 in attorneys' fees; and $1,770.10 in costs. (Hamasaki Decl. ¶ 20(B), (C).) Additionally, under 29 U.S.C. §§ 1132(a)(3), 1132(g)(2)(E), Plaintiff requests for the Court to order Employer to comply with its obligation under the CBA and ERISA to fully produce its books and records so that Plaintiff can complete an audit to determine if additional amounts are due. (Compl. ¶ 27.)

**B.  Procedural Background**

On June 6, 2017, Plaintiff filed a Complaint against the Anzalones, Employer, Western, Solpac, and Liberty. (Compl., ECF No. 1.) Solpac and Liberty were dismissed on June 29, 2017 pursuant to Fed. R. Civ. P. 41(a)(1). (ECF No. 10.) Plaintiff served the Anzalones on July 26, 2017 and Employer on July 31, 2017. (ECF Nos. 13, 14, 15.) Pursuant to a settlement agreement, Western was dismissed on August 18, 2017. (ECF No. 17.) The Anzalones and Employer failed to answer the Complaint, and the Clerk entered default against the Anzalones on August 30, 2017 and against Employer on September 5, 2017. (ECF Nos. 21, 23.) On September 7, 2017, Plaintiff filed a Motion for Order for Accounting, and the Court granted the motion on September 26, 2017, requiring Employer to submit to an audit of its books and records for the purpose of ascertaining the contributions due to the Plaintiff.

(ECF Nos. 25, 29.) Plaintiff now moves for default judgement against Employer and the Anzalones. (ECF No. 32.)

### III. LEGAL STANDARD

Before a court can enter a default judgment against a defendant, a plaintiff must satisfy the procedural requirements for default judgment set forth in Federal Rules of Civil Procedure 54(c) and 55(a), as well as Local Rule 55-1. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against whom default was entered; (2) identification of the pleading entering default; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice. *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Federal Rule of Civil Procedure 55(b)(2) authorizes district courts discretion to grant default judgment after the Clerk enters default under Rule 55(a). *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When moving for a default judgment, the well-pleaded factual allegations in the complaint are accepted as true, with the exception that allegations as to the amount of damages must be proved. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam); *see also* Fed. R. Civ. P. 54(c) ("[A] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

In exercising its discretion, the Court considers the *Eitel* factors: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV. DISCUSSION

### A. Procedural Requirements

Plaintiff has satisfied the procedural requirements for the entry of a default judgment against Defendants. The Clerk entered defaults against The Anzalones on August 30 and against Employer on September 5, 2017. (ECF Nos. 21, 23.) Plaintiff's counsel has declared that: (1) Defendants are not infants or incompetent persons; (2) Defendants are not covered under the Servicemembers Civil Relief Act, and (3) Defendants were served with the Motion for Default Judgment. (Hamasaki Decl. ¶¶ 5–7, 18.) Plaintiff has therefore complied with the Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1. In addition, the circumstances support entry of default judgment against Defendants in the amount Plaintiff requests.

### B. *Eitel* Factors

The Court concludes that the *Eitel* factors weigh in favor of entering a default judgment. The Court will discuss each factor in turn.

#### 1. Plaintiff Would Suffer Prejudice

The first *Eitel* factor asks whether the plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Defendants have failed to participate in this action, and without a default judgment, Plaintiff will have no other recourse for recovery. (ECF Nos. 21, 23.) Therefore, this factor favors entry of default judgment.

#### 2. Merits of Plaintiff's Claim and, Sufficiency of Complaint

The second and third Eitel factors together "require that a plaintiff 'state a claim on which [it] may recover.'" *PepsiCo*, 238 F. Supp. 2d at 1175. In the Complaint, Plaintiff asserted three claims for relief against Defendants: (1) Failure by Employer to contribute to Trust Funds per Agreements and ERISA, (2) Joint and Several Liability for Damages for Breach of Fiduciary Duties in Violation of ERISA by Employer and

Anzalones, and (3) Specific Performance compelling audit of Employer's books. (*See generally* Compl.)

### a. Contributions to Trust Funds

Under ERISA § 515, "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan . . . shall, to the extent not inconsistent with law, make such contributions . . . ." 29 U.S.C. § 1145. If the employer fails to do so, a plaintiff may bring an action under 29 U.S.C. § 1132 (d)(1) to recover the unpaid contributions.

Plaintiff alleges that to work on projects for the San Diego Unified School District ("SDUSD") Employer became and remains obligated to the Agreements which bind it to the Master Labor Agreements and Trust Agreements which bind it to Plaintiff's Trust Funds. (Compl. ¶¶ 21–22.) The Trust Agreements require Employer to pay contributions to the Trust Funds for each hour worked by or paid to Employer's labor employees. (*Id.* ¶ 22.) Plaintiff alleges that Employer employed workers who performed services covered by the agreements. (*Id.* ¶ 27.) Therefore, Employer was required under ERISA to make the contributions to the Trust Funds as stipulated by the Agreements, which Defendants did not do. (*Id.*) Plaintiff thus properly alleged a meritorious claim against Employer under § 1132(d)(1) for violations of ERISA and the Agreements. Employer, by its default, admits liability for the claims asserted.

### b. Breach of Fiduciary Duty

The Complaint also alleges that the Anzalones fall within the definition of fiduciary because as agents, managing officers, directors, managing employees, and/or beneficial owners of Employer they exercised discretionary authority or control in the management or disposition of the assets of the Trust Funds. (*Id.* ¶¶ 40–41.) ERISA defines a fiduciary as "[a person] with respect to a plan to the extent . . . he exercises any discretionary authority or control respecting management of such plan or exercises authority or discretionary control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). Any individual who acts as a fiduciary with respect to a plan

or trust covered by ERISA can be liable for breach of fiduciary duty under ERISA. *See Acosta v. Pacific Enters.*, 950 F.2d 611, 617 (9th Cir.1991).

The Ninth Circuit liberally construes the definition of fiduciary under ERISA. *See Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir. 1997). To determine whether the Anzalones are fiduciaries, the Court must resolve (1) whether the unpaid contributions are trust assets, and (2) whether the Anzalones did in fact exercise authority or control over these assets. *Bd. of Trustees of Airconditioning & Refrigeration Indus. Health & Welfare Tr. Fund v. J.R.D. Mech. Servs., Inc.*, 99 F. Supp. 2d 1115, 1120 (C.D. Cal. 1999).

First, employee wage deductions intended as plan contributions are plan assets, regardless of whether such money is ever, in fact, conveyed to the plan. *See* 29 C.F.R. § 2510.3–102. Plaintiff contends that the deducted benefits for contribution to the Trust Funds are plan assets as defined by federal regulation, 29 C.F.R. § 25103-102(a)(1) and 19 C.F.R. § 2510.3-102(c). The Trust Agreements provide that benefits are earned by employees but submitted by their employers to the Trust Funds. (Decl. of Yvonne Higa in support of Mot. for Default Judgement and Final Order for Accounting ("Higa Decl.") ¶ 13, Ex. 5, ECF No. 34.) Courts have held that withheld funds are assets of the fund to which they are due and that an entity or person that determines whether and how much to contribute, controls the disposition of such plan assets and is a fiduciary to the fund with respect to them. *J.R.D. Mech. Servs., Inc.*, 99 F. Supp. 2d 1115, 1121–22 (C.D. Cal. 1999); *see Phelps v. C.T. Enterprises*, 394 F.3d 213, 219–21 (4th Cir. 2005); *United States v. Grizzle*, 933 F.2d 943, 947 (11th Cir. 1991).

Here, Employer and the Anzalones deducted the Monthly Contribution portion of employees' wages on the public works projects for contribution to the Trust Funds. The certified payroll records show a wage rate paid to Brick Tenders in October 2016 of $33.28. (Hamasaki Decl. ¶ 14, Ex. 11.1 and 11.2.) Plaintiff alleges however that the combined rate for wages and benefits for October 2016 totaled $46.69, a difference of $13.41, showing that the Anzalones failed to pay the proper rate directly to the

employees, and also did not contribute those benefits to the Trust Funds. (Mem. of P. & A. in Support of Mot. for Default Judgement ("Mem.") 13, ECF No. 35; Hamasaki Decl. ¶ 14, Exs. 11.1 and 11.2.) Because the employee wage deductions were intended as plan contributions, the unpaid employer contributions are plan assets under ERISA.

Second, "'[a]ny' control over disposition of plan money makes the person who has the control a fiduciary." *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997). The Anzalones are managing officers of Employer, who made all financial decisions regarding Employer's finances, were responsible for ensuring all wages were paid to employees, and were responsible for reporting and payment obligations of Employer's debts, including the contributions owed on behalf of workers. (Mem. 13, ECF No. 35.) Therefore, the Court finds that the Anzalones' defaults and supporting declarations demonstrate that they have exercised discretionary authority or control over the management of the Trust Fund's assets. (*See* Hamasaki Decl. ¶ 14, Exs. 11.1 and 11.2); *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1459 (9th Cir. 1995) ("This court has held corporate officers to be liable as fiduciaries on the basis of their conduct and authority with respect to ERISA plans."). Accordingly, the Anzalones are fiduciaries to the Trust Funds under 29 U.S.C. § 1002(21)(A).

Under ERISA, a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to [them]." 29 U.S.C. § 1104(a)(1). Thus, ERISA prohibits a fiduciary from dealing "with the assets of the Plan in his own interest and for his own account." 29 U.S.C. § 1106(b)(1); *see J.R.D. Mech. Servs., Inc.*, 99 F. Supp. at 1122 ("The Ninth Circuit liberally construes this provision to protect plan participants and beneficiaries."). Here, the deducted contributions owed on behalf of Employer, and not turned over to the Trust Funds, give rise to the Anzalones' liability for the amounts deducted from the employees' wages and damages. Therefore, the Court finds that the Anzalones breached their fiduciary duty under 29 U.S.C. § 1104(a)(1), because they

failed to pay the full compensation and withheld from payment deducted contributions payable to the Trust Funds.

Under section 409(a) of ERISA, which provides, in pertinent part that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" is personally liable "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . . ." 29 U.S.C. § 1109(a). Because the Anzalones are fiduciaries under ERISA and they breached their duty, each is personally liable for the unpaid contributions. As such, the Court finds that Plaintiff has sufficiently pleaded a meritorious claim for breach of fiduciary duty and joint and several liability against the Anzalones.

### c. Specific Performance

In addition to monetary damages, Plaintiff requested in the Complaint that the Court order Employer to comply with its obligations under the Agreements and ERISA to fully produce its books and records in order for Plaintiff to complete an audit to determine if additional amounts are due. (Compl. ¶ 37.) Plaintiff sought this equitable relief pursuant to 29 U.S.C. § 1132(g)(2)(E), which provides that the Court shall award "other legal or equitable relief as the court may deem appropriate" in an action to enforce a multiemployer plan in which the fiduciary obtains a favorable judgment. The Court has previously recognized Plaintiff's right to an audit of Employer's records and entered an Interlocutory Order for Accounting on September 26, 2017. (ECF No. 29.) Moreover, the Trust Agreements require Employer to submit to an audit. (Higa Decl. ¶¶ 17–18, Exs. 3, 4, 6.) Further, based on Plaintiff's uncontested allegations, Plaintiff has pleaded a sufficiently meritorious claim, and the Court deems specific performance compelling audit an appropriate equitable relief under 29 U.S.C. § 1132(g)(2)(E).

As Plaintiff sufficiently stated three claims on which it could recover, the second and third *Eitel* factors weigh in favor of entering default judgement.

### 4. Amount at Stake

The fourth *Eitel* factor balances the sum of money at stake with the "seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No. C 11–0961–CW (MEJ), 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011). The amount at stake must not be disproportionate to the harm alleged. (*Id.*) Default judgments are disfavored where the sum of money requested is too large or unreasonable in relation to a defendant's conduct. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

The Court finds the damages requested by Plaintiff are reasonable. As Plaintiffs have been able to recover the money owed to the Trust Funds from third parties, all they are requesting here are attorney's fees and costs, totaling $3,813.25. (Hamasaki Decl. ¶ 21.) The awarding of attorney's fees and costs is mandatory following a finding of an ERISA violation. 29 U.S.C. § 1132(g)(2). The amount of attorney's fees was calculated using the schedule set forth Local Rule 55-3. The Court finds that the amount at stake is reasonable given that Defendants have been found to have violated ERISA. Therefore this factor weighs in favor of entering default judgement.

### 5. There is No Possibility of Dispute as to Material Facts

The next *Eitel* factor considers the possibility that material facts are disputed. *PepsiCo*, 238 F. Supp. 2d at 1177. The general rule is that a defaulting party admits the facts alleged in the complaint as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). As discussed, Plaintiff has adequately alleged the facts necessary to establish the claims in its Complaint, and Defendants have not challenged the validity of Plaintiff's allegations. (ECF Nos. 21, 23.) Accordingly, the Court finds that this factor also weighs in favor of default judgment.

### 6. Defendants' Default Was Not Due to Excusable Neglect

There is little possibility of excusable neglect and default judgment is favored when defendants fail to respond after being properly served. *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Here, Plaintiff served

Employer with the Complaint on July 31, 2017, and the Anzalones on July 26, 2017. (ECF Nos. 13, 14, 15.) Defendants were also served with the present motion on March 30, 2018. (ECF No. 37.) Furthermore Plaintiff's attorney communicated with an attorney for the Defendants multiple times in September 2017. (Hamasaki Decl. ¶ 10.) Despite this Defendants failed to participate in this litigation in any meaningful way, and there is no evidence that Defendants' default was the result of excusable neglect. Accordingly, the sixth *Eitel* factor favors entry of default judgement.

### 7. Decision on the Merits

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, where, as here, defendants fail to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *See PepsiCo*, 238 F. Supp. 2d at 1177. Because Defendants failed to respond to Plaintiff's Complaint, the Court finds that the seventh *Eitel* factor does not preclude entry of a default judgment.

## C. Damages & Equitable Relief

Because Plaintiff is entitled to default judgment, the Court must determine the proper amount of damages. In an action to recover delinquent contributions, the Court must award the following:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Plaintiff cannot rely solely on allegations to establish damages, for "even a defaulting party is entitled to have its opponent produce some evidence to

support an award of damages." *LG Elec., Inc. v. Advance Creative Computer Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002); *see also Wecosign*, 845 F. Supp. 2d at 1079 ("[A]llegations of the amount of damages suffered are not necessarily taken as true."). Here, as Plaintiff has recovered the principal amounts claimed against third parties, it only asks the Court to award attorney's fees and costs. (Mem. 16.)

**1. Attorneys' Fees**

Plaintiff requests $2,043.15 in attorneys' fees. (Hamaski Decl. ¶ 20(B).) In an action under 29 U.S.C. § 1132(g)(2), attorneys' fees are mandatory. Under the Local Rules for this district, attorneys' fees awarded upon default judgment are generally calculated according to a fee schedule based upon the amount of judgement awarded. C.D. Cal. L.R. 55-3. Because Plaintiff recovered the principal amounts prayed for in the Complaint from third parties they are no longer asking the Court for a monetary judgement, and so would be entitled to $0 in attorney's fees. Plaintiff is therefore asking for fees in excess of the schedule, and may do so provided they "file a written request at the time of entry of the default judgment." (*Id.*) The Court "shall hear the request and render judgment for such fees as the Court may deem reasonable." (*Id.*)

Plaintiff is asking for an award of attorney's fees calculated off of the Local Rule 55-3 schedule, based on the amount originally prayed for in the complaint. (Hamaski Decl. ¶ 20(B).) The amount originally prayed for was $24,052.54. (Compl. ¶ 29.) According to Local Rule 55-3, a judgement of this amount would entitle Plaintiff to attorney's fees of $1200 plus 6% of the amount over $10,000.00. C.D. Cal. L.R. 55-3. This results in an award of $2,043.15 for Plaintiff (6% of the amount over $10,000.00 ($1,4052.54) equals $843.15, plus $1,200.00). This amount is only in excess of the Local Rule schedule because Plaintiff was forced to recover the original amount from third parties due to Defendants delays and refusal to cooperate with the audit of Employer's records. Therefore the Court deems that an award of attorney's fees calculated off of the Local Rule schedule for the award originally prayed for is reasonable, and awards Plaintiffs $2,043.15 in attorney's fees.

### 2. Costs

Next, Plaintiff seeks $1,770.10 in costs incurred pursuing this action, consisting of:

a. $400.00 filing fee (Hamasaki Decl. ¶20(C), Ex. 13.1);
b. $59.95 for service of Complaint on K. Anzalone (Hamasaki Decl. ¶20(C), Ex. 13.2);
c. $95.95 for service of Complaint on B. Anzalone (Hamasaki Decl. ¶20(C), Ex. 13.3);
d. $80.95 for service of Complaint on Employer (Hamasaki Decl. ¶20(C), Ex. 13.4);
e. $840.50 for attempted services of the Court's Interlocutory Order for Accounting (Hamasaki Decl. ¶20(C), Ex. 13.5).
f. $78.50 for service of Subpoena to the SDUSD (Hamasaki Decl. ¶20(C), Ex. 13.6);
g. $214.25 in fees for the production of records from the SDUSD (Hamasaki Decl. ¶20(C), Ex. 13.7);

Pursuant to 29 U.S.C. § 1132(g)(2)(D), costs of the action are recoverable. Here, Plaintiff's fees for filing, service of process and document production are reasonable and recoverable, thus the Plaintiff may file a Notice of Application to the Clerk to Tax Costs within 14 days of the Court entering judgment. C.D. Cal. L.R. 54-3.1, 54-3.2, 54-3.10.

### 3. Final Order of Accounting

The Court has already recognized Plaintiff's right to an audit of Employer's records and previously entered an Interlocutory Order for Accounting on September 26, 2017. (ECF No. 29.) Moreover, the Trust Agreements require Employer to submit to an audit. (Higa Decl. ¶¶ 17–18.) The Court deems specific performance compelling audit an appropriate equitable relief under 29 U.S.C. § 1132(g)(2)(E). Therefore, the Court finds that Plaintiff is entitled to a final order for accounting and **ORDERS** Defendants to submit to an audit of Employer's payroll and business records as follows:

<u>The following documents relating to Defendant's work on all projects for the SDUSD covered by the SDUSD PSA:</u>

    (1)    All payroll and employee documents including, but not limited to, Employer's payroll journals, employees' earning records, certified payrolls, payroll check books and stubs, canceled payroll checks, payroll time cards, state and federal payroll tax returns, labor distribution journals, any other documents reflecting the number of hours which Employer's employees worked, their names, social security numbers, addresses, job classifications and the projects on which the employees performed their work.

    (2)    All Employer's job files relating to its work including all documents, agreements, and contracts between Employer, and the general contractor, or any subcontractor, the daily work logs, supervisor's diaries or notes, employees' diaries, memoranda, releases and any other documents which related to the supervision of Employer's employees on all SDUSA PSA projects.

    (3)    All Employer's documents related to cash receipts, including but not limited to, the cash receipts journals, accounts receivable journal, accounts receivable subsidiary ledgers and billing invoices for Employer's work on SDUSA PSA projects.

    (4)    All Employer's bank statements for all checking, savings and investment accounts.

    (5)    All Employer's documents related to cash disbursements, including but not limited to, vendors' invoices, cash disbursement journal, accounts payable journals, check registers, cancelled checks and all other documents which indicate cash disbursements.

    (6)    All Monthly Report Forms submitted by Employer to any union trust fund.

(7) Documents, records, or other writings pertaining to and including the checks/payments issued to any person, company and/or subcontractor relating to work performed on Employer's construction projects, including but not limited to day laborers, or other non-union workers hired to work on Employer's project.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Entry of Final Default Judgment. (ECF No. 32.) Additionally, the Court finds that the Plaintiff is entitled to a Final Order for Accounting and **ORDERS** Defendants to submit to an audit of Employer's payroll and business records, as outlined above. Defendants, jointly and severally, shall pay Plaintiff the following amounts:

- **$3,813.25** against Anzalone Masonry, Inc., consisting of:
  - $2,043.15 in attorneys' fees; and
  - $1,770.10 in costs
- **$3,813.25** against KerryAnne Anzalone, and Blase Anzalone, Jr., consisting of:
  - $2,043.15 in attorneys' fees; and
  - $1,770.10 in costs

The Court will issue judgment.

**IT IS SO ORDERED.**

June 13, 2018

_____

**OTIS D. WRIGHT, II**

**UNITED STATES DISTRICT JUDGE**